STATE of Ohio ex rel. GAINS, Appellant,

v.

GO GO GIRLS CABARET, INC. et al., Appellees.

[Cite as *State ex rel. Gains v. Go Go Girls Cabaret, Inc.*, 187 Ohio App.3d 356, 2010-Ohio-870.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 09 MA 146.

Decided March 2, 2010.

Paul Gains, Mahoning County Prosecuting Attorney, and Ralph Rivera, Assistant Prosecuting Attorney, for appellant.

James Vitullo, for appellees.

VUKOVICH, Presiding Judge.

{¶ 1} Plaintiff-appellant, Paul Gains, appeals the decision of the Mahoning County Common Pleas Court that ruled that the state must return seized computers to defendant-appellee Go Go Girls Cabaret, Inc. Appellant urges that the judge that presided over a civil nuisance case was unauthorized to rule on a motion for the return of property that had been seized pursuant to a search warrant issued by another judge who was presiding as the grand jury judge at the time and thus was the judge in charge of search warrants pursuant to local rule. Appellant alternatively contends that the trial court erred in ordering the return of seized property because it was needed for an ongoing criminal investigation.

{¶ 2} For the following reasons, we conclude that the judge presiding over the civil nuisance case had no authority to order the return of property that had been seized pursuant to a criminal search warrant issued by another judge and had not been used in the nuisance trial. Consequently, the judgment of the trial court ordering the return of seized computers is reversed.

## STATEMENT OF THE CASE

{¶ 3} On May 1, 2009, the state filed a nuisance action against Go Go Girls Cabaret, Inc. and its owners and operators, Triple G Investments, Inc., Robert Neill, and Sebastian Rucci. Among other complaints, there were allegations of drug trafficking, prostitution, and underage drinking. The action was randomly assigned to Judge D'Apolito under case No. 2009CV1619. Because an ex parte temporary restraining order was also sought and because Judge D'Apolito was not available that day, Judge Durkin ruled on and granted the temporary order to close the business.

{¶ 4} On the same day, a search warrant for the premises was issued in case No. 09SW21 by Judge Durkin *under his authority as the grand jury judge at the time*. Computers were specifically listed as objects to be searched for evidence of prostitution. Four computers, among other items, were seized during the search. Judge Durkin thereafter issued a second search warrant in case No. 09SW26 to allow the contents of the computers to be reviewed.

{¶ 5} An amended complaint was filed in the nuisance action to outline some of the evidence seized pursuant to the search warrant. The preliminary-injunction phase of the nuisance action was consolidated with the final hearing on the permanent injunction. The nuisance hearing began on May 15, 2009, before Judge D'Apolito. At the nuisance trial, the court criticized a detective because he had not yet reviewed the contents of the video system contained on a computer seized pursuant to a search warrant. The detective replied that the state Bureau of Criminal Investigations needed to extract the files before he could conduct his review. The court inquired what value the files would have after the case was over, and the detective specifically stated that he was currently testifying in a civil proceeding *but that the computers had been seized for a criminal proceeding*.

{¶ 6} On May 27, 2009, this judge issued a decision declaring the property a public nuisance. The Cabaret was assessed a tax of $300 payable to the clerk of courts and a fine of $10,000 payable to Austintown Township to offset the cost of the investigation. The property was ordered closed for one year with the ability to apply for release from the closure order after 90 days upon presentation of evidence that the nuisance had been abated.

{¶ 7} The Cabaret sought release from the closure effective July 30, 2009, 90 days from the actual closure. On July 28, 2009, the court granted the motion. At the end of its decision, the court added, "The Austintown Township Police Department is authorized to return possession of the real and personal property back to the Respondents."

{¶ 8} On August 12, 2009, the Cabaret filed a motion in the civil nuisance action for the return of the four computers seized on May 1, 2009. The Cabaret stated that the computers were necessary to run the cash register and the video monitoring system. The Cabaret attached an e-mail from the police department noting that three of the computers had been returned by BCI to the police department, that the computer containing the video system still needed to be exported to a format that could be reviewed off-site, and that the prosecutor's office had advised the police department not to return any computers.

{¶ 9} The Cabaret then supplemented its motion by claiming that search warrants are assigned to the same judge that holds the underlying case and that the administrative judge has no authority to determine issues in cases assigned to another judge. The Cabaret stated that some of the evidence seized pursuant to the search warrant had been introduced as evidence at the nuisance trial.

{¶ 10} The state responded that the computers had been seized pursuant to a criminal search warrant issued by Judge Durkin and thus Judge D'Apolito had no jurisdiction to address the motion for return of the seized property, also noting that the nuisance-abatement action did not involve the contents of the computers, as none of them had been reviewed by the time of the nuisance trial. The state pointed out that on July 31, 2009, the Cabaret had filed a motion to unseal the search-warrant affidavit in Judge Durkin's court, which Judge Durkin denied.

{¶ 11} The state alternatively stated that a criminal investigation was ongoing and the computers were needed as evidence under R.C. 2981.11. The state noted that BCI's extraction was not yet complete and that law-enforcement officers would continue the criminal investigation after reviewing the extracted files.

{¶ 12} At the hearing on the motion, the state agreed to return the three computers whose contents had been copied and reviewed in return for a stipulation that the copies from BCI were mirror images of the computers' contents. Thus, we are now concerned only with the final computer, containing the video system.

{¶ 13} The state noted that contents of the fourth computer, which contained the video monitoring system, had recently been copied. However, its contents had not yet been reviewed by the detective, and thus the computer could not be returned, because the copy would run only in the particular computer itself. The court voiced disbelief of this claim.

{¶ 14} The court also stated that it had heard no evidence of an ongoing criminal investigation. In addition, the court opined that the state had disobeyed the court's July 28, 2009 order, which the court believed was a clear order to return the computers, even though it merely stated that the police were "authorized" to return personalty.

{¶ 15} On August 25, 2009, Judge D'Apolito granted the Cabaret's motion and ordered the state to return all personal property in the custody or control of the state within three days. The state appealed from this order. On September 14, 2009, this court ruled that the state had filed a timely notice of appeal, thus disposing of any notion that the trial court's July 28, 2009 order actually ordered the state to return personalty. This court stayed the trial court's return order pending appeal. The state's brief sets forth the following two assignments of error:

{¶ 16} "The trial court never acquired jurisdiction over the seized computers, because they were seized and searched pursuant to two lawful search warrants issued by Judge John M. Durkin—acting in his official capacity as grand jury judge—and therefore, the trial court's order to return the seized property is void ab initio."

{¶ 17} "The trial court erred when it ordered the return of property that was seized and searched pursuant to two lawful search warrants where the record demonstrates that the property is needed as evidence in an ongoing criminal investigation, and for later use at trial."

## LAW AND ANALYSIS

{¶ 18} Crim.R. 26 states that physical property, other than contraband, under the control of a prosecuting attorney for use as evidence in a hearing or trial should be returned to the owner at the earliest possible time. Notably, this is aspirational rather than mandatory. A more specific statute provides that any property that has been seized pursuant to a search warrant and that is in the custody of a law-enforcement agency shall be kept by the agency "pending the time it no longer is needed as evidence or for another lawful purpose." R.C. 2981.11(A)(1).

{¶ 19} Before we can reach the merit issue presented in the state's second assignment of error (regarding whether the computer is needed as evidence or for another lawful purpose), we must address the issue raised in the state's first assignment of error as to whether a judge assigned to a civil nuisance suit has the authority to determine whether the seized computer is needed as evidence or for another lawful purpose when a search-warrant docket remains open and assigned to the judge who was given the sole authority under local rules to issue the

search warrant used to seize this computer and the authority to rule on all matters in the criminal case prior to assignment to a particular judge.

{¶ 20} We begin by outlining the grand jury judge's functions. A Mahoning County Common Pleas Court local criminal rule provides:

{¶ 21} "A Judge of the General Division of the Common Pleas Court shall be in charge of the Grand Jury for all purposes, and shall serve as Grand Jury Judge for a period of four months, consisting of one term of court. The judges will rotate this responsibility in order of their respective courtroom numbers. * * *

{¶ 22} "(1) *The Grand Jury Judge shall* appoint counsel for all indigent defendants in the Common Pleas Court at or before arraignment; *hear applications for and, if appropriate, issue search warrants;* hear and decide extraditions; *and hear and decide all matters in criminal cases prior to assignment of a case to a particular court.*

{¶ 23} "(2) If the Grand Jury Judge is not available, matters shall be referred to the next available Judge according to ascending courtroom numbers." (Emphasis added.) Loc.Crim.R. 2(B)(1) and (2).

{¶ 24} Another local criminal rule provides that the clerk of courts shall secure search-warrant-related documents filed by the judge in a separate jacket and maintain a separate search-warrant docket. Loc.Crim.R. 7(A) and (B).

{¶ 25} Without recognizing the effect of these rules, the Cabaret suggests that the court's return order was justified under a statute providing that after declaring property to be a nuisance, the court can direct the sale of personalty or release property to the owner, citing R.C. 3767.06(A) and (C). However, as the state points out, this statute deals with property found to have been used in conducting or maintaining the nuisance. R.C. 3767.06(A). The court did not make such a finding here regarding the computer; in fact, it specifically found that the computer had not been analyzed at the time of the nuisance trial. Moreover, this provision deals with the contents of the nuisance property that remain therein. *If the contents were removed under some other order, that other order remains as a separate bar.* See, e.g., R.C. 3767.06(A) ("The release of property under this division shall not release it from any judgment, lien, penalty, or liability to which it may be subject").

{¶ 26} Thus, if the property was seized pursuant to a criminal search warrant, R.C. 3767.06(A) does not authorize the nuisance court to order the return of the property. Rather, return of the property is subject to other procedural obstacles, which will be discussed below.

{¶ 27} Before proceeding any further, we stop to address the state's conclusion that a judge assigned to a civil nuisance suit has no jurisdiction to order the

return of evidence seized pursuant to a search warrant issued by the grand jury judge if the evidence was not presented as part of the nuisance action. Based upon this argument, the state urges that the court's order is void.

{¶ 28} A lack of jurisdiction that would make an order void is distinct from a lack of authority (sometimes also referred to as jurisdiction) that would make an order voidable. As the Supreme Court has pointed out, the word "jurisdiction" is sometimes used (or overused) to refer to a court's jurisdiction to hear a particular case but is more appropriately considered a lack of authority to rule on a certain matter or to proceed in a certain manner. *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, 19–21. The court pointed out that lack of subject-matter jurisdiction is the type of jurisdiction that can void a judgment; however, a lack of authority to rule when the court has subject-matter jurisdiction results in a voidable rather than a void judgment. Id. at ¶ 10–12, 34. Following this line of reasoning, the Supreme Court concluded, for example, that a failure to convene a three-judge panel in a death-penalty plea made a judgment voidable, not void, because the common pleas court had jurisdiction over adult criminal cases. Id.

{¶ 29} Likewise, it has been stated that the failure to abide by local rules constitutes a procedural error and does not divest the court of subject-matter jurisdiction. *Foss v. Wu,* 10th Dist. No. 02AP–530, 2003-Ohio-1895, 2003 WL 1874731, ¶ 24; *Clayton v. Zdrilich* (Jan. 21, 1998), 7th Dist. No. 96CA69, 1998 WL 30090, citing *Cole v. Cent. Ohio Transit Auth.* (1984), 20 Ohio App.3d 312, 312–313, 20 OBR 414, 486 N.E.2d 140; *State ex rel. Pantona v. Fisher* (Aug. 13, 1990), 8th Dist. No. 60147. See also Civ.R. 82 (civil rules do not extend or limit jurisdiction); Civ.R. 83 (local rules shall not conflict with civil rules); Loc.Crim.R. 1 (civil rules apply to criminal procedure except where otherwise provided). We also point out that a search warrant "may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a law enforcement officer." Crim.R. 41(A).

{¶ 30} Thus, a common pleas court judge has subject-matter jurisdiction to issue a search warrant concerning property within its jurisdiction. For all of these reasons, Loc.Crim.R. 2(B) is a procedural rule whose violation does not affect jurisdiction in the sense of voiding a judgment.

{¶ 31} Still, because the state filed a timely notice of appeal from the disputed entry, the issue of whether the judgment is void or voidable is not of great importance here. If a trial judge assigned to a civil suit lacked authority to rule on the motion for return of property seized pursuant to a search warrant issued by another judge, who was still presiding over the search-warrant docket of that

particular warrant, then the decision would be reversible. We thus continue to address the civil-nuisance court's authority in this particular case.

{¶ 32} Pursuant to Crim.R. 41(B), a search warrant may be issued to seize evidence concerning the commission of *a crime*. That was the purpose of the warrant issued here: a criminal investigation. It was not issued as some type of discovery tool in a civil suit or asked for under the guise of inspecting the premises for the benefit of the public health, safety, or welfare. See R.C. 2933.22(B). Executing the warrant were officers from the local police department, the county law-enforcement task force, the drug unit, the CRT unit, and the DA Task Force.

{¶ 33} As mentioned, a local criminal rule provides for the creation of the search-warrant docket. Loc.Crim.R. 7(B). Another local criminal rule specifically states that the grand jury judge shall hear applications for and issue search warrants and shall hear and decide all matters in criminal cases prior to assignment of a case to a particular court. Loc.Crim.R. 2. It follows that the court assigned to that particular search-warrant docket is the one that should rule on a motion to return property seized pursuant to that search warrant prior to the filing of criminal charges and the assignment of the case to another court. Otherwise, different trial judges could negate each other's search-warrant decisions as to whether a valid criminal investigation exists.

{¶ 34} Plus, R.C. 2945.67(A) provides: "A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case, or any decision of a juvenile court in a delinquency case, which decision grants * * * a motion for the return of seized property * * *." This further demonstrates that a ruling on a motion for the return of property seized pursuant to a criminal search warrant is a decision in a criminal case. In addition, it confirms that a motion for the return of seized property is an available method to seek such a return [1] and that the trial court in the criminal case is the proper court to rule on the motion.

---

1. {¶ a} Some courts have addressed the merit issue of whether return of seized property should be ordered, by way of a replevin action. See, e.g., *Hicks v. Barberton Police*, 9th Dist. No. 23976, 2008-Ohio-3732, 2008 WL 2876550 (affirming the trial court's denial of a petition for replevin of computer seized pursuant to a search warrant finding that criminal investigation remained open); *501(C) Charity Consultants, Inc. v. Alexander*, 9th Dist. No. 20881, 2002-Ohio-3732, 2002 WL 1625566 (reversing trial court decision to order return of seized property). However, these courts did not state that replevin was the sole remedy and were not faced with the procedural issue of where to file a motion for return of seized property.

{¶ b} Considering the language of R.C. 2945.67(A), replevin is not the sole remedy. As mentioned, this statute assumes the filing of the "motion" (not "action") for return of seized property in the pertinent criminal court. Even if replevin could have been used here, the property owner could not have chosen to file such an action in the docket of the civil-nuisance judge; rather, a random assignment of a new action would occur.

{¶ 35} In addition, "[p]roperty seized under a warrant shall be kept for use as evidence by the court which issued the warrant or by the law enforcement agency which executed the warrant." Crim.R. 41(D). See also R.C. 2933.26 ("When a warrant is executed by the seizure of property or things described therein, such property or things shall be kept by the judge, clerk, or magistrate to be used as evidence"). Considering the language of Crim.R. 41(D), it would be contradictory for another trial judge, who had merely been assigned to a civil case, to order the release of the criminal evidence seized pursuant to a criminal search.

{¶ 36} This is especially true when the evidence had not been presented at the civil nuisance suit, because the contents of the computers had not been extracted or reviewed at that time. Contrary to the Cabaret's assertion, merely because other seized evidence was presented in the nuisance suit does not mean that the computers were not seized as part of a criminal investigation. Likewise, the act of amending the nuisance complaint to refer to items seized during the execution of the search warrant does not turn the search warrant into a noncriminal matter.

{¶ 37} True, the civil-nuisance judge is authorized to determine every issue in the case until its termination. See Sup.R. 36(B)(1). However, ordering the return of property seized pursuant to a criminal search warrant when the state's defense is an ongoing criminal investigation is not an issue in a civil nuisance suit. Rather, it is an issue in the criminal case, which exists only as a docketed search-warrant case until criminal charges are filed. For all of the foregoing reasons, the state's first assignment of error is sustained.

{¶ 38} The state's second assignment of error, dealing with the merits of the court's decision, was to be reached only if we found that the civil-nuisance court had authority to consider the Cabaret's motion for return of seized property. Since the court assigned to hear the nuisance case did not possess that authority under the facts of this case, the second assignment of error is moot.

## CONCLUSION

■ {¶ 39} The request for the return of property seized pursuant to a criminal search warrant was a matter concerning a criminal case prior to assignment. There was an open search-warrant docket pertaining to this evidence. Just as the motion to unseal the search-warrant affidavit was filed in the court that presided over that particular search-warrant docket, the request for the return of seized property should also have been filed under this docket. In other words, when an owner of seized property chooses merely to file a request for the return of property seized pursuant to a criminal search warrant (and especially if the property was not even presented as evidence in the nuisance action), the issue is one for the court that presides over the particular search-warrant docket. Thus, the judge who had been assigned only to the civil

nuisance case was not authorized to dispose of the Cabaret's motion by determining whether there still existed a pending criminal investigation for which the evidence was needed.

{¶ 40} For the foregoing reasons, the judgment of the trial court is hereby reversed.

Judgment reversed.

WAITE and DeGENARO, JJ., concur.