[Cite as *Blanchard Twp. Bd. of Trustees v. Simon*, 2023-Ohio-1704.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

BOARD OF TRUSTEES
BLANCHARD TOWNSHIP,

      PLAINTIFF-APPELLEE,

                                CASE NO.  6-22-17

      v.

ENOCH SIMON,

      DEFENDANT/THIRD-PARTY
      PLAINTIFF-APPELLANT,

      v.                                O P I N I O N

ROB WILSON, INDIVIDUALLY AND AS
TRUSTEE OF BLANCHARD TOWNSHIP, ET AL.

      THIRD-PARTY DEFENDANTS-
      APPELLEES.

**Appeal from Hardin County Common Pleas Court**
**Trial Court No. CVH 20211132**

**Judgment Affirmed**

**Date of Decision:   May 22, 2023**

APPEARANCES:

      *Zachary D. Maisch* for Appellant

      *Patrick Kasson and Mac P. Malone* for Appellees

**ZIMMERMAN, J.**

{¶1} Defendant/third-party plaintiff-appellant, Enoch Simon ("Simon"), appeals the August 23 and 30, 2022 judgments of the Hardin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, the Blanchard Township Board of Trustees (Blanchard Township), and third-party defendants-appellees, Rob Wilson ("Wilson"), Mike Crist ("Crist"), Kevin Ridgeway ("Ridgeway"), and Thomas Jenkins ("Jenkins") as to Simon's counterclaims and third-party complaint. We affirm.

{¶2} This case stems from the issuance and execution of two search warrants at Simon's property located at 1445 SR 68 in Dunkirk, Ohio. Simon's property is zoned for agricultural use.

{¶3} On December 11, 2019, Jenkins (in his capacity as the township-zoning inspector) appeared before the trial court as the affiant on the affidavit for a search warrant for Simon's property. Katey L Henson ("Henson"), a non-attorney employee of the Hardin County Prosecutor's Office, and Wilson appeared with Jenkins. (*See* Doc. No. 44, Ex. B). Based on the evidence presented, the trial court issued a search warrant to Jenkins to enter Simon's property. According to Wilson, Henson bolstered the township's warrant request by presenting the trial court with pictures reflecting the condition of Simon's property. (Wilson Depo. at 10).

{¶4} As a result, Jenkins, Wilson, and Henson executed the search warrant at Simon's property on December 16, 2019. Prior to executing the search warrant, Blanchard Township requested the assistance of law enforcement but was unable to obtain such assistance.

{¶5} Jenkins returned the search warrant on December 16, 2019 along with a statement of his observations of the condition of Simon's property relative to a possible zoning violation. In response, Simon removed all property identified as being a violation of "R.C. 505.87," except for a boat, which was abated by the township.[1] (Jenkins Depo. at 19, 22).

{¶6} Following that discord, Simon "began to erect * * * greenhouses [and a fence] on his property." (*Id.* at 23). (*See also id.* at 26). Prior to beginning construction of the fence, Simon contacted Jenkins on March 9, 2020 inquiring whether Blanchard Township required a permit to erect a "non-farming" fence. (*Id.* at 21). According to Jenkins, there were no "regulations at all about fences at that time in the zoning code." (*Id.* at 22). Nevertheless, Blanchard Township amended its zoning resolution in December 2020. As a result of the zoning-resolution amendment, Jenkins sent Simon a letter explaining the amendments as they related to "[t]he fencing that he was building and the buildings that he was putting up" even though Simon was not in violation of any zoning code. (*Id.* at 26).

---

[1] Simon testified that the boat was on the property when the property was deeded to him.

-3-

{¶7} Nonetheless, in the spring of 2021, Blanchard Township developed renewed concerns that Simon was using his property in a manner that was inconsistent with its agricultural designation. Specifically, based on his observation, Jenkins did not think that Simon was using the new, partially constructed structures for an agricultural use. According to Jenkins, "[o]ne was just for storing junk, and the one behind the fence, it didn't even look like a building yet." (*Id.* at 30).

{¶8} Moreover, Wilson testified that the structures were visible from the road. Simon agreed that "some things are visible" from the road; however, he further testified that "some things are blocked out by a fence" and "half a building wall." (Simon Depo. at 14). Importantly, Simon testified that "the only way to" ascertain the condition of his property is "to go on the property." (*Id.* at 15).

{¶9} Based on Jenkins's and Wilson's observations, Blanchard Township elected to pursue another search warrant for Simon's property. Specifically, Wilson testified that Blanchard Township's purpose for seeking the search warrant was to "look[] to see if there were" any "zoning violations." (Wilson Depo. at 19).

{¶10} To obtain the second search warrant, Wilson (in his capacity as a township trustee), along with Henson, appeared before the trial court on August 3, 2021. Wilson—the affiant on the affidavit for the second search warrant—averred that he "observed there to be structures that have been partially finished for six (6) months, garbage and debris, and excessive, overgrown vegetation" on Simon's

property. (Doc. No. 39, Ex. L). Wilson further averred that such conditions "are evidence of" a violation of R.C. 505.87. Moreover, Wilson testified that the trial court was provided with *new* pictures depicting the condition of Simon's property.

{¶11} Based on that evidence, the trial court issued the second search warrant to Wilson (and all assisting agencies) to search for evidence of a violation of R.C. 505.87. (Doc. No. 39, Ex. M). Consequently, Wilson, Henson, and a law-enforcement officer (in plain clothing) entered Simon's property on August 5, 2021 to execute the search warrant.

{¶12} Wilson returned the search warrant on August 5, 2021. In the search-warrant return, Wilson stated that he observed "[e]xcessive [o]vergrown [v]egetation scattered throughout the perimeter of the property"; "[d]ebris (including but not limited to scrap metal, scrap wood, building materials scattered throughout, [and] farm equipment"; "[n]umerous brush and wood piles overgrown with weeds"; "[a]t least 3 junk motor" vehicles; and "2 partially built structures, one housing more junk and debris with no roof." (Doc. No. 39, Ex. N.).

{¶13} Subsequently, on October 20, 2021, Blanchard Township filed a complaint in the trial court against Simon alleging claims for zoning-injunctive relief and requesting that the trial court declare the property a nuisance under R.C. 505.87 and 505.871. On December 17, 2021, Simon filed an answer along with counterclaims and a third-party complaint against Wilson, Crist, and Ridgeway,

individually and in their capacities as Blanchard Township trustees, and Jenkins, individually and in his capacity as the (former) Blanchard Township zoning inspector (collectively, "third-party defendants"). Simon alleged four counterclaims and third-party claims: (1) a violation of his civil rights by trespass under 42 U.S.C. 1983; (2) violation of his civil rights by malicious prosecution under 42 U.S.C. 1983; (3) conspiracy to violate civil rights under 42 U.S.C. 1983; and (4) conspiracy to interfere with civil rights under 42 U.S.C. 1985.[2] Blanchard Township and the third-party defendants filed an answer on January 4, 2022.

{¶14} On July 1, 2022, Simon filed a motion in the trial court to suppress evidence—namely, "photographs and visual observation as included in the search warrant return of [Wilson] filed * * * on August 5, 2021." (Doc. No. 39). In his motion, Simon argued that the search warrant issued by the trial court on August 3, 2021 was invalid or defective. As a result, Simon claimed that search violated his Fourth Amendment Rights. The third-party defendants and Blanchard Township filed memoranda in opposition to Simon's motion to suppress on July 14 and 22, 2022, respectively.

{¶15} On August 12, 2022, the trial court denied Simon's motion to suppress after concluding that "[a] motion to suppress is a procedure usable in a criminal

---

[2] On December 29, 2021, Simon removed his counterclaims and third-party complaint to federal court. However, on January 7, 2022, Simon's counterclaims and third-party complaint was remanded to the trial court.

case, but has no place in a civil case." (Doc. No. 51). Nevertheless, the trial court, treating Simon's motion as a motion in limine, denied the motion after concluding that the "motion is so vague as to be impossible to determine exactly what [Simon] is asking to disallow into evidence." (*Id.*). Reaching that conclusion, the trial court reasoned that

> [i]t appears probable that all evidence obtained by a visual reviewing of [Simon's] property * * * from the highway or the raised railroad bed adjacent to or near the property, would be admissible under the 'open fields' doctrine. Case law has even extended this provision to allow the viewing of the premises while standing on complaining owner's land.

(*Id.*). Likewise, the trial court concluded that "Simon has not specifically designated which photos or other evidence he believes would not have been obtainable by the 'open fields' doctrine." (*Id.*).

{¶16} On July 1, 2022, Blanchard Township filed a motion for summary judgment, arguing that there is no genuine issue of material fact that Simon's constitutional and civil rights were not violated because the search warrants were validly issued. That same day, the third-party defendants filed a motion for summary judgment as to Simon's counterclaims and third-party complaint, arguing that there is no genuine issue of material fact that Simon's rights were not violated. On July 25, 2022, Simon filed his memorandum in opposition to Blanchard Township's and the third-party defendants' motions for summary judgment. The

third-party defendants filed their reply to Simon's memorandum in opposition to their motion for summary judgment on July 26, 2022.

{¶17} That same day, the trial court conducted a hearing during which it permitted the parties to present arguments relative to Blanchard Township's and the third-party defendants' motions for summary judgment. On August 23, 2022, the trial court granted summary judgment in favor of Blanchard Township and the third-party defendants. Specifically, the trial court concluded that "the civil search warrants issued [in this case] were not 'bogus' and were properly executed." (Doc. No. 52). Likewise, the trial court concluded that Simon "provided no facts, nor case law, nor statutory law to support his specific claims of violation of his civil rights nor malicious prosecution, nor even that this property was being used in compliance with the Blanchard Township building regulations." (*Id.*). Consequently, the trial court dismissed Simon's counterclaims and third-party complaint.

{¶18} On August 24, 2022, Simon filed a motion requesting that the trial court reconsider its decision granting summary judgment in favor of Blanchard Township and the third-party defendants. In his motion, Simon argued that the trial court incorrectly concluded that Simon did not file a response to the motions for summary judgment. On August 25, 2022, the third-party defendants filed a memorandum in opposition to Simon's motion for reconsideration. However, realizing its oversight, on August 30, 2022, the trial court reconsidered its decision

granting summary judgment in favor of Blanchard Township and the third-party defendants, yet reached the same result. (Doc. No. 56).

{¶19} On August 31, 2022, Simon filed a motion requesting that the trial court certify its decision under Civ.R. 54(B), which the trial court denied on September 1, 2022.

{¶20} On September 22, 2022, the parties entered into an agreed entry settling the case. (Doc. No. 63). In the agreed entry, Simon agreed to "petition the appropriate authorities to reclassify the property from A-1 Agricultural to general commercial C-1"; remove "junk, debris piles that have nothing to do with the construction of green houses or Quonset structures"; to mow the grass "to prevent an obnoxious weed issue"; and to remove "all junk motor vehicles [and] trailers or semi-trailers." (*Id.*).

{¶21} Simon filed his notice of appeal on October 21, 2022. He raises two assignments of error for our review, which we will address together.

**Assignment of Error No. I**

**The trial court erred in granting summary judgment and dismissing the Counterclaim/Third-party Complaint since two civil search warrants and resultant searches and confiscated evidence were not properly authorized under the law and were a violation of defendant's constitutional rights against governmental intrusion onto private property.**

**Assignment of Error No. II**

**The trial court erred in granting plaintiff and third-party defendants [sic] summary judgment and dismissing the Counterclaim/Third-party Complaint in applying the "open fields" doctrine to justify the governmental intrusion onto defendant's real property and the confiscation of evidence.**

{¶22} In his assignments of error, Simon argues that the trial court erred by granting summary judgment in favor of Blanchard Township and the third-party defendants. Specifically, Simon argues that the trial court erred by concluding that there is no genuine issue of material fact that his constitutional and civil rights were not violated because the warrants were validly issued in this case.

*Standard of Review*

{¶23} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶24}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

**{¶25}** In this case, the trial court granted summary judgment on August 23 and 30, 2022 in favor of Blanchard Township and the third-party defendants as to Simon's counterclaims and third-party complaint after concluding that there is no genuine issue of material fact that Simon's constitutional or civil rights were not violated. Specifically, the trial court concluded that "the civil search warrants were not 'bogus', and that same were properly presented, granted and executed." (Doc. No. 56). Likewise, the trial court concluded that "[t]he 'open fields' doctrine * * * applies in its simplest form" because there was "no evidence" that "the Township required any other inspection than a visual inspection from the properties adjacent to [Simon's] property, or the railroad bed." (*Id.*).

-11-

**{¶26}** Here, Simon argues there are genuine issues of material fact that remain as to whether Blanchard Township and the third-party defendants violated his constitutional and civil rights. Specifically, Simon contends that genuine issues of material fact remain as to whether Blanchard Township and the third-party defendants violated his Fourth Amendment rights. *See Trubiani v. Graziani*, 9th Dist. Medina No. 2874-M, 2000 WL 14043, *4 (Dec. 29, 2000) (noting that Trubiani based his Section 1983 claim on "his Fourth Amendment right to be free from a warrantless search and seizure").

> **{¶27}** 42 U.S.C. 1983 provides, in its relevant part, that
>
> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

*Harvey v. Republic Servs. of Ohio II, L.L.C.*, 5th Dist. Stark No. 2007 CA 00278, 2009-Ohio-1343, ¶ 68, quoting 42 U.S.C. 1983. *See also Ramey v. Mudd*, 154 Ohio App.3d 582, 2003-Ohio-5170, ¶ 21 (4th Dist.) ("Municipalities and other local governments are included among those 'persons' to whom Section 1983 applies."). "[T]he purpose of Section 1983 [is] providing 'a remedy for violations of substantive rights created by the United States Constitution or federal statute." *Mayes v. Columbus*, 124 Ohio App.3d 411, 415 (10th Dist.1997). *See also Trubiani*

at *4 (noting that Section 1983 claim "is limited, however, to deprivations of federal constitutional or statutory rights").

**{¶28}** "To establish a Section 1983 claim, a plaintiff must show that (1) the conduct in question was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of rights, privileges or immunities secured by the United States Constitution or other federal law." *Harvey* at ¶ 69. *See also Ramey* at ¶ 21 (noting that "when the execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury, the government may be responsible under Section 1983.").

**{¶29}** We will begin by addressing Simon's argument that Blanchard Township and the third-party defendants violated his constitutional and civil rights because the search warrants were defective or invalid. "The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *State v. Harrington*, 10th Dist. Franklin No. 14AP-571, 2015-Ohio-2492, ¶ 7, quoting the Fourth Amendment to the U.S. Constitution. "The Ohio Constitution contains a nearly identical provision." *Id.*, citing Ohio Constitution, Article I, Section 14.

{¶30} "The Fourth Amendment to the Constitution of the United States protects against unreasonable searches and seizures." *Huber Hts. v. Liakos*, 145 Ohio App.3d 35, 48 (2d Dist.2001). "The reasonableness of a search depends on the totality of the circumstances in each case." *Id.* "Probable cause exists when there are reasonable grounds for a belief of guilt that is particularized with respect to the person, place, or items to be seized." *Dawson v. Richmond Hts.*, 8th Dist. Cuyahoga No. 105938, 2018-Ohio-1301, ¶ 15. "The existence of probable cause is determined by analyzing the totality of the circumstances surrounding the governmental intrusion and involves a practical, common-sense review of the facts available to the government actor at the time of the search or seizure." *Id.*

{¶31} "The United States Supreme Court has applied the principle that 'a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant' * * * ." *State v. Griesbaum*, 11th Dist. Ashtabula No. 2017-A-0029, 2017-Ohio-8363, ¶ 20, quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528-529, 87 S.Ct. 1727 (1967). *See also See v. Seattle*, 387 U.S. 541, 543, 87 S.Ct. 1737 (1967) (noting that the inspection of private property by a government official is presumptively unreasonable under the Fourth Amendment if such search is conducted without a warrant). "In addition, '[t]o be reasonable under the Fourth Amendment, a search ordinarily must be based

on individualized suspicion of wrongdoing.'" *Griesbaum* at ¶ 20, quoting *Chandler*

*v. Miller*, 520 U.S. 305, 313, 117 S.Ct. 1295 (1997).

> "The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant."

*Id.*, quoting *Camara* at 539. *See also Dawson* at ¶ 18 (noting that the issuing court

"could properly consider the conditions of the * * * property, as well as the

conditions of surrounding neighborhood properties, to determine whether probable

cause existed to believe that conditions on [the] property were or could become

hazardous to the public health, safety, or welfare").

{¶32} "'"Administrative searches are 'significant intrusions upon the

interests protected by the Fourth Amendment,' and generally require that a

government official possess 'a suitably restricted search warrant.'"'" *Baughman v.*

*Bd. of Zoning Appeals* for Harrison Twp., 3d Dist. Logan No. 8-01-27, 2002-Ohio-

3931, ¶ 19, quoting *Huber Hts. v. Liakos*, 145 Ohio App.3d 35, 48 (2d Dist.2001),

quoting *J.L. Spoons, Inc. v. Brunswick*, 49 F.Supp.2d 1032, 1040 (N.D.Ohio 1999),

quoting *Camara* at 534. *See also Dawson* at ¶ 16 ("The Fourth Amendment

protections extend to administrative searches."). However, "[p]robable cause to

issue an administrative warrant for entry into premises is the subject of a flexible

standard of reasonableness given the agency's particular demand for access and the

public need for effective enforcement of the regulation involved." *State v. Finnell*, 115 Ohio App.3d 583, 589 (1st Dist.1996). *See also Dawson* at ¶ 16 (noting that "the evidence of a specific violation required to establish administrative probable cause must 'show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed'"), quoting *W. Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 958 (11th Cir.1982); *Camara* at 535 ("In determining whether a particular inspection is reasonable—and thus is determining whether there is probable cause to issue a warrant for that inspection—the need for the inspection must be weighed in terms of these reasonable goals of code enforcement."). Importantly, "'the decision to enter and inspect will not be the product of the unreviewed discretion of the enforcement officer.'" *Finnell* at 589, quoting *See* at 543.

{¶33} "[I]n Ohio, search warrants are issued according to the authority in R.C. 2933.21 through 2933.25, and Crim.R. 41." *State v. Wilkes*, 6th Dist. Wood No. WD-19-087, 2020-Ohio-5292, ¶ 11. *See also Alton v. Beightler*, N.D.Ohio No. 1:07CV3799, 2009 WL 112828, *9 (Jan. 15, 2009) (noting that Crim.R. 41(A) sets "forth the rules governing search warrants in Ohio"). Specifically, "R.C. 2933.21(F) permits a judge to issue warrants permitting a search for existing or potential physical conditions hazardous to the public health, safety, or welfare." *Dawson* at ¶ 18. "R.C. 2933.22(B) goes on to state that "a warrant of search * * *

shall issue only upon probable cause to believe that conditions exist upon such property which are or may become hazardous to the public safety." *State v. Campana*, 11th Dist. Lake No. 9-180, 1983 WL 6068, *1 (Dec. 30, 1983). Under "Crim.R. 41(B), a search warrant may be issued to seize evidence concerning the commission of a *crime*." (Emphasis sic.) *State ex rel. Gains v. Go Girls Cabaret, Inc.*, 187 Ohio App.3d 356, 2010-Ohio-870, ¶ 32 (7th Dist.).

**{¶34}** Based on our review of the search warrants at issue in this case, we conclude that they are invalid. In particular, our review of the search warrants reveals that neither warrant was requested by a prosecuting attorney or a law enforcement officer and neither warrant was issued to a law enforcement officer.

**{¶35}** Indeed, Crim.R. 41 provides, under the "[a]uthority to issue [a] warrant," that such warrant my issue "[u]pon the request of a *prosecuting attorney* or a *law enforcement officer*." (Emphasis added.) Crim.R. 41(A). *See State v. Morgan*, 12th Dist. No. CA2013-08-146, 2014-Ohio-2472, ¶ 12; *State v. Balduff*, 6th Dist. Huron No. H-92-029, 1993 WL 24483, *3 (Feb. 5, 1993).

**{¶36}** Likewise, the rule requires that the warrant "be directed to a law enforcement officer." Crim.R. 41(A). *Accord United States v. Powell*, N.D.Ohio No. 3:19-CR-216, 2020 WL 2199758, *2 (May 6, 2020) ("Ohio law requires that a search warrant be issued by a judge to a law enforcement officer."). *See also State v. Harrison*, 20 Ohio Misc. 282, 287 (C.P.1969) ("The use of the term 'A warrant

for search shall be directed to the proper officer' in section 2933.24, Ohio Revised Code, indicates that the legislature intended that the search warrant should be executed and the search made by a sheriff, constable or police officer in the area of their respective territorial jurisdictions"); R.C. 2933.24 (requiring that "[a] search warrant shall be directed to the proper law enforcement officer or other authorized individual"); R.C. 2935.12(A) (describing an "other authorized individual" as possessing the authority to arrest).

{¶37} "This requirement means that the issuing judge, after determining that probable cause exists to search, must issue the warrant to a * * * law enforcement officer and only to a law enforcement officer." (Emphasis sic.) *State v. Klein*, 6th Dist. Wood No. 84-CR-106, 1985 WL 7095, *17 (Apr. 12, 1985) (Handwork, J., dissenting). *See also Powell* at *2 ("While a state law enforcement officer must execute a search warrant issued by an Ohio court, that officer may be accompanied by an individual who does not fall within the definition of 'law enforcement officer.'"), quoting *State v. Joiner*, 8th Dist. Cuyahoga No. 81394, 2003-Ohio-3324, ¶ 15.

{¶38} Based on our review of the search warrants at issue in this case, we conclude that neither warrant was requested by a prosecuting attorney or a law enforcement officer and neither warrant was issued to a law enforcement officer. That is, the persons requesting the search warrants in this case or to whom the

warrants were issued—Jenkins, Wilson, and Henson—are neither a prosecuting attorney nor a law enforcement officer.

{¶39} Under the Revised Code, a "'[p]rosecutor' includes the county prosecuting attorney and any assistant prosecutor designated to assist the county prosecuting attorney, * * * or any attorney designated by the prosecuting attorney of the county to appear for the prosecution of a given case." R.C. 2935.01(C) (2016) (current version at R.C. 2935.01(C) (2023)). *See also* R.C. 2933.231(A)(2). A "'[p]rosecuting attorney' means the attorney general of this state, the prosecuting attorney of a county, the law director, city solicitor, or other officer who prosecutes a criminal case on behalf of the state or a city, village, township, or other political subdivision, and the assistant or assistants of any of them." Crim.R. 2(G).

{¶40} Further, the Revised Code defines a "[l]aw enforcement officer" as any of the following:

> (a)   A sheriff, deputy sheriff, constable, police officer of a township or joint police district, marshal, deputy marshal, municipal police officer, member of a police force employed by a metropolitan housing authority under division (D) of section 3735.31 of the Revised Code, or state highway patrol trooper;
>
> (b)   An officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, a duty to conserve the peace or to enforce all or certain laws is imposed and the authority to arrest violators is conferred, within the limits of that statutory duty and authority;
>
> (c)   A mayor, in the mayor's capacity as chief conservator of the peace within the mayor's municipal corporation;

(d) A member of an auxiliary police force organized by county, township, or municipal law enforcement authorities, within the scope of the member's appointment or commission;

(e) A person lawfully called pursuant to section 311.07 of the Revised Code to aid a sheriff in keeping the peace, for the purposes and during the time when the person is called;

(f) A person appointed by a mayor pursuant to section 737.10 of the Revised Code as a special patrolling officer during riot or emergency, for the purposes and during the time when the person is appointed;

(g) A member of the organized militia of this state or the armed forces of the United States, lawfully called to duty to aid civil authorities in keeping the peace or protect against domestic violence;

(h) A prosecuting attorney, assistant prosecuting attorney, secret service officer, or municipal prosecutor;

(i) A veterans' home police officer appointed under section 5907.02 of the Revised Code;

(j) A member of a police force employed by a regional transit authority under division (Y) of section 306.35 of the Revised Code;

(k) A special police officer employed by a port authority under section 4582.04 or 4582.28 of the Revised Code;

(l) The house of representatives sergeant at arms if the house of representatives sergeant at arms has arrest authority pursuant to division (E)(1) of section 101.311 of the Revised Code and an assistant house of representatives sergeant at arms;

(m) The senate sergeant at arms and an assistant senate sergeant at arms;

(n) A special police officer employed by a municipal corporation at a municipal airport, or other municipal air navigation facility, that has scheduled operations, as defined in [the Code of Federal Regulations],

and that is required to be under a security program and is governed by aviation security rules of the transportation security administration of the United States department of transportation * * * .

R.C. 2901.01(A)(11) (2019) (current version at R.C. 2901.01(A)(11) (2023)). *See* R.C. 2933.231(A)(1). *See also Klein* at *17 (specifying, in relevant part, that "[a] statutory power of arrest * * * is given to police officers under R.C. 2935.03").

{¶41} Likewise, Crim.R. 2 defines a "[l]aw enforcement officer" as

"a sheriff, deputy sheriff, constable, municipal police officer, marshal, deputy marshal, or state highway patrolman, and also means any officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, the *authority to arrest* violators is conferred, when the officer, agent, or employee is acting within the limits of statutory authority."[3]

(Emphasis added.) Crim.R. 2(J).

{¶42} Consequently, as a (non-attorney) employee of the prosecutor's office, Henson is not a prosecuting attorney or a law enforcement officer. Furthermore, neither Jenkins (in his capacity as a zoning inspector) nor Wilson (in his capacity as a township trustee) are a law enforcement officer. *See* 1998 Ohio Atty.Gen.Ops. No. 98-018, at paragraph two of the syllabus ("A township zoning inspector is not a '[l]aw enforcement officer' under R.C. 2901.01(A)(11) or [Crim.R.] 2(J).").

{¶43} Therefore, neither Jenkins, nor Wilson, nor Henson had the authority to request a search warrant or were individuals to whom a search warrant could be

---

[3] "The definition of 'law enforcement officer' contained in this rule shall not be construed to limit, modify, or expand any statutory definition, to the extent the statutory definition applies to matters not covered by the Rules of Criminal Procedure." Crim.R. 2(J).

properly directed. *Compare Klein*, 1985 WL 7095 at *18 (concluding that a BCI agent "was not a 'law enforcement officer' to whom a search warrant could be properly directed"); *State v. Martins Ferry Eagles*, 62 Ohio Misc. 3, 6 (C.P.1979) (concluding that "[a] secret service officer appointed by the prosecuting attorney does not have statutory authority to arrest and thus is not a law enforcement officer under Crim.R. 2 for the purpose of receiving and executing a search warrant under Crim.R. 41"); *Campana*, 1983 WL 6068, at *1 (concluding that the search warrant was invalid under Crim.R. 41(C) because it "was not 'directed to a law enforcement officer'"; rather, it "was issued to the Health Commissioner" and "[t]here is no statutory authority authorizing issuance to the Health Commissioner"), quoting Crim.R. 41(C).

{¶44} Importantly, neither Jenkins, nor Wilson, nor Henson had any authority to arrest (beyond that of a private citizen) Simon. *See Klein* at *18; *Morgan*, 2014-Ohio-2472, at ¶ 12 (suggesting that, to constitute a law enforcement officer under Crim.R. 41(A), such person must have the authority to arrest). *See also* 1998 Ohio Atty.Gen.Ops. No. 98-018 at *6 (expressing that "no provision within the Revised Code authorizes a township zoning inspector to make arrests while enforcing township zoning regulations").

{¶45} For these reasons, we conclude that the search warrants issued in this case were invalid. Nevertheless, our inquiry does not end there. *Accord State v.*

*Hardy*, 2d Dist. Montgomery No. 16964, 1998 WL 543368, *4 (Aug. 28, 1998) ("Finding a violation of Crim.R. 41(A), however, does not end our inquiry into whether the evidence obtained pursuant to the defective search warrant should have been suppressed.").

**{¶46}** "'The exclusionary rule operates to exclude evidence obtained by the government in violation of the United States Constitution.'" *State v. Hoffman*, 6th Dist. Lucas No. L-12-1262, 2013-Ohio-1082, ¶ 20, quoting *State v. Helton*, 160 Ohio App.3d 291, 2005-Ohio-1789, ¶ 14 (11th Dist.). "'The purpose of this rule is to deter police misconduct.'" *Id.*, quoting *Helton* at ¶ 14. "'The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality.'" *Id.*, quoting *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, ¶ 20 (2d Dist.). Consequently, "'[t]he derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure.'" *Id.*, quoting *McLemore* at ¶ 20.

**{¶47}** "The exclusionary rule is not a personal right or a means to redress constitutional injury; rather, it is used to deter future violations." *Id.* at ¶ 23. "[T]he exclusionary rule generally applies where police exhibit "'deliberate," "reckless,"

or "grossly negligent"' disregard for Fourth Amendment rights, * * * " but not 'when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful.'" *Id.*, quoting *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419 (2011), paragraph a of the syllabus. "Finally, if the police 'conduct involves only simple, isolated negligence,' the deterrence rationale loses much of its force, 'and exclusion cannot "pay its way."'" *Id.*, quoting *Davis* at paragraph a of the syllabus, quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405 (1984), fn. 6.

{¶48} "The exclusionary rule does not apply to evidence police obtain in good faith in reliance on the validity of a warrant." *Id.* at ¶ 22. "Under the good faith exception, we are to uphold searches when police reasonably and in good faith relied upon a warrant subsequently declared to be invalid, because excluding evidence under such circumstances would not deter police misconduct." *Id.*, citing *Leon* at syllabus and *State v. Wilmoth*, 22 Ohio St.3d 251 (1986), paragraph one of the syllabus.

{¶49} Further, "'[o]nly a "fundamental" violation of Rule 41 requires automatic suppression, and a violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards.'" *Alton*, 2009 WL 112828, at *8, quoting *United States v. Luk*, 859 F.2d 667, 671 (9th Cir.1988). *See also State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, ¶ 20

(2d Dist.). "'Violations of Rule 41 which do not arise to constitutional error are classified as "non-fundamental.'"" *Alton* at *8, quoting *Luk* at 671. ""Non-fundamental" noncompliance with Rule 41 requires suppression only where: "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule."'"" *Id.*, quoting *Luk* at 671, quoting *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980). *See Joiner*, 2003-Ohio-3324, at ¶ 16. *See also Morgan*, 2014-Ohio-2472, at ¶ 15 (observing that "'[a]bsent a legislative mandate requiring its application, the exclusionary rule will not be applied to statutory violations falling short of constitutional violations.'"), quoting *State v. Turner*, 12th Dist. Butler No. CA91-10-165, 1992 WL 121685, *2 (June 1, 1992).

{¶50} Based on the evidence presented, we conclude that the search-warrant deficiencies are not fundamental violations because they are "not a violation of constitutional magnitude." *Wilmoth* at 264. *See also Hardy*, 1998 WL 543368, at *5 ("In general, Ohio courts have concluded that evidence obtained in violation of Crim.R. 41 need not be suppressed."). Critically, Simon was not prejudiced by the search and that there is no evidence of an intentional and deliberate disregard for the rule. *See Morgan* at ¶ 15 (noting that that "the Morgans have failed to provide any evidence that they were somehow prejudiced by [the] alleged [Crim.R. 41]

-25-

violation"); *Wilmoth* at 264 (concluding that "there is no evidence of prejudice and the [Crim.R. 41] violation was not intentional"). *See also Klein*, 1985 WL 7095, at *4; *Alton* at *8.

**{¶51}** Furthermore, notwithstanding the invalidity of the search warrants at issue in this case, they were not deficient for purposes of probable cause sufficient for an administrative search. *See Klein* at *17 (Handwork, J., dissenting) (analyzing that the "invalidity did not render the search warrant deficient for purposes of probable cause to search, because that is a different issue"). Importantly, an invalid search warrant is "harmless if the affidavit would have established probable cause when the omissions are taken into consideration." *United States v. Skeddle*, 989 F.Supp. 870, 872 (N.D.Ohio 1996). *See also Morgan* at ¶ 15 (concluding that Crim.R. 41 violations "merely constitute a technical, 'non-fundamental' violation of the rule"); *Joiner* at ¶ 16 ("If the error in the search warrant is not constitutional in nature, it is non-fundamental.").

**{¶52}** Apart from the deficiencies, the evidence presented to the trial court to corroborate the search warrants was sufficient to establish probable cause sufficient for an administrative search. Indeed, considering the totality of the circumstances of the intrusion in this case, the search warrants reasonably related to Blanchard Township's particularized need to access Simon's property for the effective enforcement at its zoning regulations. *See Camara*, 387 U.S. at 538-539.

Notwithstanding that standard, the search warrants nevertheless particularly described the place to be searched and the things to be seized. *Compare Alton* at \*8 (repeating that the "search warrant at issue was otherwise constitutional—there was probable cause to search and the warrant described 'with particularity the place to be searched and the items to be seized'"), quoting *United States v. Freeman*, 897 F.2d 346, 350 (8th Cir.1990). In other words, the record reveals that the proof provided to the trial court in support of the search warrants demonstrated "reasonable grounds for a belief of guilt that is particularized with respect to the person, place, or items to be seized." *Dawson*, 2018-Ohio-1301, at ¶ 15.

{¶53} As a result, because these violations constitute "a technical, 'non-fundamental' violation of Crim.R. 41(A) [and the Revised Code], the exclusionary rule simply does not apply here." *Morgan* at ¶ 15. *See Alton* at \*8 (noting that "'the exclusionary rule should not be applied to a warrant improperly issued to and executed by an officer lacking authority under Rule 41'"), quoting *Luk* at 671; *Klein* at \*19 (confirming that "the use of the exclusionary rule is not the appropriate remedy for a violation of the rules of criminal procedure" or "for a violation of state statutory law"). *See also Wilmoth* at 262 (affirming that "the policy that the exclusionary rule would not be applied to statutory violations falling short of constitutional [sic] violations, absent a legislative mandate requiring the application

-27-

of the exclusionary rule"). As a result, we conclude that Simon's Fourth Amendment rights were not violated under the facts presented.

{¶54} "Because we find no error of constitutional magnitude, we need not reach the issue of whether the good faith exception" applies in this case. *Hardy*, 1998 WL 543368, at *6. "However, it should be obvious that 'good faith' has been a consideration in our decision to affirm." *Id.* That is, "even 'non-fundamental' Crim.R. 41 violations require suppression where 'there is evidence of intentional and deliberate disregard of a provision in the Rule,'" which are not present in this case. *Id.*, quoting *Vasser*, 648 F.2d at 510.

{¶55} Nevertheless, Simon argues that the trial court erred by applying the open-fields doctrine to justify the intrusion. Under the open-fields doctrine, "even though there [is] a trespass by police officers, no illegal search or seizure occur[s] because the Fourth Amendment protection afforded to people in their 'persons, homes, papers, and effects' is not extended to 'open fields.'" *State v. Woolley*, 5th Dist. Ashland No. 16-COA-003, 2017-Ohio-576, ¶ 28, quoting *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445 (1924). That is, "[g]overnment intrusion upon open fields is not an 'unreasonable search' as proscribed by the Fourth Amendment." *Id.* *See also State v. Vondenhuevel*, 3d Dist. Logan No. 8-04-15, 2004-Ohio-5348, ¶ 10 (announcing that "no expectation of privacy legitimately attaches to open fields"). However, because we conclude that the Crim.R. 41 (and

corresponding Revised Code) violations do not rise the level of a constitutional violation (invoking the exclusionary rule), we need not address whether the open-fields doctrine applies in this case. *See Hardy* at *6.

**{¶56}** Because we conclude that Simon's Fourth Amendment rights were not violated in this case, we conclude that there is no genuine issue of material fact that neither Blanchard Township nor the third-party defendants violated Simon's constitutional or civil rights. *See FRC Project, L.L.C. v. Canepa Media Sols., Inc.*, 8th Dist. Cuyahoga No. 97845, 2013-Ohio-259, ¶ 14 (concluding that "there has been no deprivation of any right"); *Linley v. DeMoss*, 83 Ohio App.3d 594, 600 (10th Dist.1992) (concluding that to "the extent that plaintiffs' Section 1983 claim is based upon an alleged Fourth Amendment tort, it fails the objective reasonableness standard"). Consequently, "there can be no successful Section 1983 action." *FRC Project* at ¶ 14. *See also Trubiani*, 2000 WL 14043, at *5. Therefore, the trial court did not err by granting summary judgment in favor of Blanchard Township and the third-party defendants.

**{¶57}** Simon's assignments of error are overruled.

**{¶58}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**MILLER, P.J. and WALDICK, J., concur.**