[Cite as *State v. Gibson*, 2025-Ohio-5497.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25-CA-00018 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Licking County Court of Common Pleas, Case No. 24 CR 00131 |
| RONALD M. GIBSON | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry:December 9, 2025 |

**BEFORE:**   WILLIAM B. HOFFMAN, P.J.  KEVIN W. POPHAM, J.; DAVID M. GORMLEY,  Appellate Judges

**APPEARANCES:** KENNETH OSWALT for Plaintiff-Appellee; SIERRA SEE, For Defendant-Appellant

OPINION

*Popham, J.*

{¶1}    Defendant-Appellant Ronald M. Gibson ("Gibson") appeals from the judgment of the Licking County Court of Common Pleas overruling his motion to suppress.  For the reasons below, we affirm.

*FACTS AND PROCEDURAL HISTORY*

{¶2}    On February 21, 2024, detectives with the Central Ohio Drug Enforcement Task Force conducted surveillance at 284 South Williams Street, Apartment A, in Newark, Licking County, a location known for drug activity. *Plea T. at 12.* Shortly after a vehicle departed from that location, officers conducted a traffic stop of the vehicle, which was being driven by Chuck Hinson,

and recovered evidence of drug trafficking, upon which detectives sought and obtained a warrant to search the residence. The warrant was executed the same day. *Id.*

{¶3}   Inside the apartment, officers identified Gibson's bedroom by personal items therein, including photographs of Gibson and his child, mail bearing his name, and Gibson's presence in the room. During the search, detectives recovered a firearm under a pillow on the bed and a bag of suspected crack cocaine in the corner of the bed. *Plea T. at 13.* Behind the bed, near a window and in the precise location where Gibson had been standing, officers discovered a large bag of suspected powder cocaine. *Id.*

{¶4}   Multiple safes were also located in the bedroom. Although Gibson initially claimed he did not know the combinations, he provided the correct combinations after officers began forcing open the safes, one of which contained a large quantity of methamphetamine, a small bag of white powder, and paper currency; another safe contained additional cash. A second firearm was recovered from the closet. Officers also found a cooler containing approximately one pound of marijuana, along with multiple digital scales and baggies. In the kitchen, detectives located tools commonly used to manufacture crack cocaine, including measuring devices, two microwaves, cutting agents, and a hot plate. *Plea T. at 13.*

{¶5}   A search of Gibson's person revealed additional cash in the front pocket of his sweatshirt. *Plea T. at 13-14.* Field testing identified approximately 24 grams of crack cocaine, 58 grams of powder cocaine, and 442 grams of methamphetamine. *Id. at 14.* During a subsequent interview, Gibson admitted he was "hustling" - selling drugs. Officers seized a total of $3,462 in cash from Gibson's person and the bedroom area. They also recovered assorted tools and gaming consoles, which officers testified are often traded for drugs.

{¶6} Central Ohio Regional Crime Lab testing confirmed the substances included: 418.6645 grams of methamphetamine (a Schedule II controlled substance); 70.3897 grams of cocaine; 1.4432 grams of amphetamine; 8.0004 grams of psilocybin; and 5.56 grams and 0.4166 grams of MDMA. *Id. at 14.* Gibson had prior convictions for trafficking in drugs in Franklin County, Court of Common Pleas, Case No. 02CR971 and for trafficking in crack cocaine in Licking County, Court of Common Pleas, Case No. 09CR181. *Plea T. at 14-15.*

**Indictment and Pretrial Proceedings**

{¶7} On February 29, 2024, the Licking County Grand Jury returned an indictment charging Gibson with the following offenses:

1. Aggravated Trafficking in Drugs (Methamphetamine), a first-degree felony, in violation of R.C. 2925.03(A)(2)/(C)(1)(f), involving an amount equal to or exceeding 100 times the bulk amount;

2. Aggravated Possession of Drugs (Methamphetamine), a first-degree felony, in violation of R.C. 2925.11(A)/(C)(1)(e), involving an amount equal to or exceeding 100 times the bulk amount;

3. Possession of Drugs (Cocaine), a first-degree felony, in violation of R.C. 2925.11(A)/(C)(4)(e), involving an amount equal to or greater than 27 grams but less than 100 grams;

4. Trafficking in Drugs (Cocaine), a first-degree felony, in violation of R.C. 2925.03(A)(2)/(C)(4)(f), involving an amount equal to or greater than 27 grams but less than 100 grams;

5. Having Weapons While Under Disability, a third-degree felony, in violation of R.C. 2923.13(A)(3);

6. Aggravated Possession of Drugs (Amphetamine), a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(1)(a);

7. Aggravated Possession of Drugs (MDMA/3,4-Methylenedioxymethamphetamine), a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(1)(a); and

8. Aggravated Possession of Drugs (Psilocybin), a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(1)(a).

{¶8} The indictment also contained six forfeiture specifications pursuant to R.C. 2981.02(A)(1)(b), (c), and R.C. 2941.1417(A), and a firearm specification under R.C. 2941.141(A).

**First Motion to Suppress**

{¶9} On July 3, 2024, Gibson filed his first motion to suppress. *Docket Entry No. 31*. He argued that the search warrant affidavit was "bare bones" and failed to establish probable cause. He further requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), contending that the affiant officer omitted material facts with reckless disregard for the truth. Finally, Gibson sought suppression of his statements, asserting they were made following an unlawful arrest resulting from a warrant issued without probable cause. On August 23, 2024, the State filed a response. *Docket Entry No. 37*.

{¶10} At the suppression hearing on September 11, 2024, the parties agreed to submit the search warrant and affidavit for the court's review. *Supp. T. at 5.* The trial court

stated it would review the warrant, issue a written decision, and, if necessary, schedule a further hearing to address Gibson's statements. *Id.*

{¶11} On October 28, 2024, the trial court issued a written entry denying the motion to suppress - concluding that the affidavit "clearly sets forth sufficient facts for the issuance of a search warrant" and that no basis existed for a further evidentiary hearing.

**Motion to Compel**

{¶12} On November 11, 2024, Gibson filed a motion captioned "Motion to Compel Law Enforcement to Turn Over and Advise the Prosecuting Attorney of All Information Acquired During the Course of Investigation, and to Compel Discovery. *Docket Entry No. 49.*

{¶13} On December 2, 2024, the trial court held a hearing on the motion. Gibson's main concern was receiving the full videos from officers' body worn cameras rather than the truncated clips provided to counsel. *T. Dec. 2, 2024 at 5-6.* The prosecutor responded that, while the suppression motion was pending, he provided additional discovery, including videos to the defense. *Id.* at 10. The State acknowledged providing video from Detective Vogelmeier and Officer Cortez, who was involved in the traffic stop, to the defense. *Id.* at 10-11; 13. The State acknowledged providing the defense with the dash camera and body camera video involving the traffic stop of Chuck Hinson. *Id.* at 14-15.

{¶14} The trial court overruled the motion to compel finding that all the evidence had been provided to the defense. *Id.* at 16.

**Subsequent Counsel and Second Motion to Suppress**

{¶15} On January 9, 2025, the trial court granted retained counsel's motion to withdraw and appointed new counsel for Gibson. *Docket Entry No. 56.* On January 21,

2025, a second retained attorney filed a notice of substitution of counsel – appearing for Gibson. *Docket Entry No. 64.*

{¶16}  On February 20, 2025, Gibson filed a second motion to suppress. *Docket Entry No. 68.* He attached six exhibits: 1. A memorandum from Detective Sergeant Adam Hoskinson (Feb. 21, 2024); 2. Detective Jarrod Conley's statement of facts (Feb. 21, 2024); 3. The search warrant and affidavit of Detective Conley; 4. Investigative notes of Officer Cortez (Feb. 21, 2024); 5. The "Walpole statement" (Feb. 21, 2024)[1]; and 6. The "Walpole supplement" (Feb. 21, 2024).

{¶17}  Gibson contended that only the Walpole supplement included the informant's statement that he "did not want to talk about the narcotics located on his person; all [he] stated was that he had just purchased the meth for $30 or $40." He argued that the inconsistencies between the Walpole documents and other officers' accounts undermined probable cause and warranted a *Franks* hearing. Gibson also asserted that officers failed to advise him of his *Miranda* rights and that his confession was involuntary due to coercion, deception, and promises.

{¶18}  On February 25, 2025, the trial court overruled the second motion to suppress without a hearing. *Docket Entry No. 69.* The court found the motion untimely, noting that trial was, after seven continuances, scheduled for April 2, 2025. The court further observed that Gibson had previously filed a motion to suppress that was denied and that Gibson had been represented by four different attorneys during the proceedings.

---

[1] Detective Hayden Walpole is a canine handler with CODE.  When he arrived on scene of the traffic stop, Officer Cortez was already speaking with Chuck Hinson. Detective Walpole spoke with Hinson after Walpole's canine partner alerted on Hinson's car. See, Exhibits 5, 6 attached to the Second Motion to Suppress.

**Plea and Sentence**

{¶19} On April 2, 2025, the State dismissed Counts 1 and 2 and the firearm specification. Gibson entered no contest pleas to Counts 3 through 8 and to the remaining forfeiture specifications. The trial court sentenced Gibson to an aggregate indefinite prison term with a minimum length of nine years and a potential maximum length of eleven and one-half years.

**Assignments of Error**

{¶20} Gibson raises three assignments of error for our consideration,

{¶21} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S SECOND MOTION TO SUPPRESS EVIDENCE."

{¶22} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR WHEN IT DENIED THE FIRST MOTION TO SUPPRESS BECAUSE THE FOUR CORNERS OF THE AFFIDAVIT FOR THE SEARCH WARRANT ISSUED FAILED TO PROVIDE THE REQUISITE PROBABLE CAUSE."

{¶23} "III. THE TRIAL COURT COMMITTED HARMFUL ERROR BY RULING ON THE FIRST MOTION TO SUPPRESS WITHOUT HOLDING A *FRANKS* HEARING AS REQUESTED BY THE DEFENDANT-APPELLANT."

{¶24} For clarity, we address Gibson's second and third assignments of error out of order.

II.

{¶25} In his second assignment of error, Gibson contends that the trial court erred in overruling his first motion to suppress because the affidavit supporting the search warrant lacked sufficient factual detail to establish probable cause. Specifically, he argues

the affidavit failed to set forth adequate facts regarding the veracity, reliability, and basis of knowledge of the information presented to the magistrate. We disagree.

### Standard of Review

{¶26} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court, as the trier of fact, is in the best position to evaluate witness credibility and resolve factual disputes. *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Consequently, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence. *Burnside* at ¶ 8; *State v. Diaw*, 2025-Ohio-2323, ¶ 8. The appellate court then independently reviews the trial court's legal conclusions de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). In doing so, we give due weight to the trial court's inferences and to those of experienced law enforcement officers operating under local conditions. *Id.* at 698.

### Gibson's Challenge to the Affidavit

{¶27} Gibson contends that the affidavit supporting the search warrant failed to establish probable cause because it omitted essential details, such as the identity of the "known drug users," the basis for their observations, the duration and scope of surveillance of the residence, the number of individuals seen leaving the residence, and whether those individuals confirmed the source of their drugs.

### Governing Principles – Search Warrants and Probable Cause

{¶28} Criminal Rule 41(C) authorizes the issuance of a search warrant only upon a sworn affidavit establishing probable cause and particularly describing the person, place, or property to be searched. The issuing magistrate must determine, based on the

facts set forth in the affidavit, that probable cause exists. *State v. George*, 45 Ohio St.3d 325, 330 (1989), *citing Illinois v. Gates,* 462 U.S. 213, 238-239 (1983). Probable cause may rest in whole or in part on hearsay, provided there is a substantial basis to believe that both the source of the hearsay and the underlying information are credible. *United States v. Ventresca,* 380 U.S. 102, 108 (1965).

{¶29} In reviewing a magistrate's finding of probable cause, neither the trial court nor a reviewing court may substitute its judgment for that of the issuing magistrate. The appellate inquiry is limited to whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus, citing *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). Reviewing courts must afford great deference to the magistrate's determination, resolving doubtful or marginal cases in favor of upholding the warrant. *George* at 329.

{¶30} Under *Illinois v. Gates*, the magistrate's task is to make a practical, common-sense decision whether, under the totality of the circumstances - including the veracity and basis of knowledge of any informants - there is a fair probability that evidence of a crime will be found. 462 U.S. at 238-239; *State v. George*, 45 Ohio St.3d at paragraph one of the syllabus. This flexible standard replaced the rigid *Aguilar-Spinelli* test, permitting reliance on hearsay when corroborated by police investigation or by the affiant's own knowledge and experience. *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). Probable cause requires only a "fair probability," not proof beyond a reasonable doubt or even a prima facie showing of criminal activity. *Gates*, 462 U.S. at 235.

{¶31} An affidavit is deemed "bare bones" only when it provides no more than suspicions or conclusory statements and fails to establish even a minimal nexus between the location and the alleged criminal activity. *State v. Schubert*, 2022-Ohio-4604, ¶ 9; *United States v. Christian*, 925 F.3d 305, 312-313 (6th Cir. 2019).

{¶32} Moreover, the affiant is not required to possess personal knowledge of every fact included in the affidavit so long as the information was reasonably obtained from reliable sources involved in the same investigation. *State v. Henderson*, 51 Ohio St.3d 54 (1990). Hearsay information may therefore support probable cause when the affiant reasonably believes it to be credible. *Franks v. Delaware*, 438 U.S. 154, 165 (1978).

**Analysis**

{¶33} Detective Conley's affidavit, though concise, set forth specific facts supporting a fair probability that contraband would be found in the target residence. The affidavit established that: (1) officers observed a vehicle leaving the residence and later found the driver of that vehicle in possession of crack cocaine; (2) The driver, Chuck Hinson, admitted he had recently purchased the drugs; (3) the residence had been the subject of ongoing surveillance and investigation; and (4) the property owner had a prior drug-related conviction, albeit more than sixteen years old.

{¶34} When considered collectively and in-light-of Detective Conley's narcotics training and experience, these facts provided a sufficient factual nexus between the residence and suspected drug activity to support the magistrate's determination of probable cause. The affidavit was not "bare bones," but rather grounded in specific, corroborated observations.

**The Good Faith Exception**

{¶35}  Even if the affidavit were viewed as marginal, suppression of the resulting evidence would not be warranted under the *United States v. Leon*, 468 U.S. 897 (1984), "good faith" exception. Under *Leon*, evidence obtained pursuant to a warrant later found invalid will not be excluded if the officers acted in objectively reasonable reliance on the magistrate's determination of probable cause. Suppression remains proper only when (1) the affidavit includes knowingly false or recklessly misleading statements; (2) the magistrate wholly abandons the judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render reliance unreasonable; or (4) the warrant is facially deficient in particularity. *Leon* at 923; *State v. Dibble*, 2020-Ohio-546, ¶ 19.

{¶36}  None of those circumstances apply here. The affidavit provided sufficient factual content to establish a minimally reasonable basis for issuance of the warrant, and the officers were entitled to rely on the magistrate's probable cause determination. As *Leon* makes clear, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon* at 926.

{¶37}  Given the totality of the information presented, the officers' reliance on the warrant was objectively reasonable. This is not a case in which the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. Accordingly, even if probable cause were debatable, the good-faith exception would bar suppression.

**Conclusion**

{¶38}  Under the totality of the circumstances, the magistrate had a substantial basis for finding probable cause to issue the search warrant. Moreover, the executing officers acted in objectively reasonable reliance on that determination. The trial court therefore correctly denied the motion to suppress.

{¶39}  Gibson's second assignment of error is overruled.

III.

{¶40}   In his third assignment of error, Gibson contends that the trial court abused its discretion by denying his request for a *Franks* hearing before ruling on his first motion to suppress. He maintains that such a hearing was necessary to determine whether the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the search warrant affidavit, and whether any such statement was essential to the magistrate's probable cause determination.

**Standard of Review**

{¶41}  A *Franks* hearing allows a defendant to challenge statements in a search warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant must make a substantial preliminary showing that false statements or omissions were knowingly or recklessly included, and necessary to probable cause.

{¶42}  Whether to hold a *Franks* hearing lies within the sound discretion of the trial court. *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017); *State v. Medley*, 2025-Ohio-1744, ¶16 (5th Dist.). On appeal, we review the denial of a *Franks* hearing under the same standard that governs review of a motion to suppress - legal conclusions are reviewed de novo, and factual findings are reviewed for clear error. *United States v.*

*Bateman*, 945 F.3d 997, 1007 (6th Cir. 2019); *State v. Sekse*, 2016-Ohio-2779, ¶ 13 (12th Dist.).

{¶43} A defendant is entitled to a *Franks* hearing only upon making a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the warrant affidavit, and (2) the allegedly false statement or omission was necessary to the finding of probable cause. *Franks*, 438 U.S. at 171; *Young,* 847 F.3d at 348-349; *State v. Khaliq*, 2017-Ohio-7136, ¶¶ 23-25 (5th Dist.).

{¶44} To warrant a *Franks* hearing, allegations of deliberate falsehood or reckless disregard must be supported by an offer of proof identifying the specific portions of the affidavit alleged to be false, accompanied by supporting affidavits or a satisfactory explanation for their absence. Allegations of negligence or innocent mistake are insufficient. *Franks* at 171; *State v. Sekse*, 2016-Ohio-2779, ¶ 13 (12th Dist.). Even when a preliminary showing is made, a hearing is not required unless, without the challenged statements, the remaining affidavit fails to establish probable cause. *State v. Cubic*, 2009-Ohio-5051, ¶ 11 (9th Dist.).

**The First Motion to Suppress – Request for a *Franks* Hearing**

{¶45} In his first motion to suppress, Gibson alleged that the detective's lack of specificity in the warrant affidavit constituted a deliberate falsehood or reckless disregard for the truth. The motion, however, was unsupported by affidavits, sworn statements, or any offer of proof. Nor did Gibson explain the absence of such materials. *See State v. Khaliq*, 2017-Ohio-7136, ¶ 25 (5th Dist.); *State v. Lazzerini*, 2021-Ohio-1998, ¶ 117 (5th Dist.). The motion contained only conclusory allegations that the detective intended to

mislead the magistrate. As other courts have held, such bare assertions are insufficient to justify a *Franks* hearing. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *Bateman*, 945 F.3d at 1008.

{¶46} Because Gibson failed to make a substantial preliminary showing that the affiant knowingly, intentionally, or recklessly included a false statement or omission material to probable cause, the trial court acted within its discretion in denying a *Franks* hearing. The record contains no evidence that would have undermined the issuing magistrate's determination of probable cause.

{¶47} Accordingly, Gibson's third assignment of error is overruled.

I.

{¶48} In his first assignment of error, Gibson contends that the trial court erred by denying his second motion to suppress. He asserts that the court abused its discretion in declining to entertain the motion despite its untimeliness under Criminal Rule 12.

**Standard of Review**

{¶49} A motion to suppress evidence is a pretrial motion under Crim.R. 12(C)(3). Crim.R. 12(D) requires that such motions be filed within thirty-five days after arraignment or seven days before trial, whichever occurs first. Failure to file a timely motion to suppress constitutes a waiver of the issue unless the trial court, in the interest of justice, grants leave for good cause shown. Crim.R. 12(H); *State v. Phillips*, 74 Ohio St.3d 72, 97 (1995). The decision to permit an untimely motion rests within the trial court's sound discretion and is reviewed for abuse of discretion. *State v. Bower*, 2010-Ohio-4420, ¶ 14 (5th Dist.); *State v. Medley*, 2025-Ohio-1754, ¶ 16 (5th Dist.). Accordingly, we review the court's ruling for an abuse of discretion. *Bower*, supra; *Medley*, ¶ 16. An abuse of

discretion occurs when the court's decision is unreasonable, arbitrary, or unconscionable - such as where its reasoning is legally incorrect, unsupported by the record, or results in a manifest injustice. *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *In re Guardianship of S.H.*, 2013-Ohio-4380, ¶ 9 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.); *State v. Roman-Navarre*, 2025-Ohio-3156, ¶ 10 (5th Dist.).

**The Second Motion to Suppress – Untimeliness and Lack of New Grounds**

{¶50} Gibson filed his second motion to suppress on February 20, 2025 - more than ten months after his arraignment on March 5, 2024, and long after the thirty-five-day filing deadline. Under Crim.R. 12(D) and (H), such delay constitutes waiver absent a showing of good cause. *See State v. Sherrod*, 2010-Ohio-1273, ¶ 43 (11th Dist.), citing *State v. Wade*, 53 Ohio St.2d 182 (1978). The substitution of counsel does not, standing alone, establish good cause. *State v. Williams*, 2017-Ohio-7371, ¶ 12 (4th Dist.); *United States v. Reynolds*, 534 F. App'x 347, 357 (6th Cir. 2013); *United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011).

{¶51} Successor counsel's second motion largely repeated the arguments previously raised and rejected. Counsel asserted only that prior counsel had failed to identify specific misleading statements, yet offered no new facts, evidence, or legal theory distinguishing the second motion from the first. Having already found that Detective Conley's affidavit supplied a substantial basis for the magistrate's probable cause determination - and that the officers' reliance on the warrant was objectively reasonable under *United States v. Leon*, 468 U.S. 897 (1984) - the trial court was not required to reconsider its ruling absent new information.

{¶52} Although Gibson appended several exhibits to his second motion, nothing in the record suggests that those materials were unavailable when the first motion was filed. The State had produced the body-camera recordings of the traffic stop of Chuck Hinson during the pendency of the first motion, and the trial court had already found that all discovery had been provided. *T. Dec. 2, 2024 at 10, 14-16.*

{¶53} In overruling the second motion, the trial court detailed the relevant procedural history. Gibson was arraigned on March 5, 2024; the thirty-five-day deadline expired on April 9, 2024. The court granted multiple extensions for pretrial motions, ultimately allowing the first suppression motion to be filed on July 3, 2024, which the court denied on October 28, 2024. New counsel entered an appearance on January 21, 2025, but did not seek an extension of the motion deadline and waited nearly thirty days to file a substantially identical suppression motion.

{¶54} Given this procedural history, the trial court acted well within its discretion in denying Gibson's motion for leave to file an untimely motion to suppress. The record reveals no new evidence, no change in circumstances, and no convincing reason to excuse the delay. The court's decision was neither arbitrary nor unreasonable but rather a measured exercise of its authority under Crim.R. 12(D) and (H).

{¶55} Gibson's first assignment of error is overruled.

{¶56} The judgment of the Licking County Court of Common Pleas is affirmed.

For the reasons stated in our Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs to Appellant, Ronald M. Gibson.

By: Popham, J.

Hoffman, P.J. and

Gormley, J.,concur