**The STATE of Ohio, Appellant,**

v.

**HELTON, Appellee.**

[Cite as *State v. Helton,* 160 Ohio App.3d 291, 2005-Ohio-1789.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2004–A–0019.

Decided April 15, 2005.

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Angela M. Scott, Assistant Prosecuting Attorney, for appellant.

Virginia K. Miller, for appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} The state of Ohio appeals from the judgment of the Ashtabula County Common Pleas Court, which granted appellee Daniel Helton's motion to suppress. We affirm.

{¶ 2} On November 24, 2003, Trooper Michael Trader of the Ohio State Highway Patrol saw a truck driving east on Footville–Richmond Road. Trader noticed that the truck did not have a front Ohio license plate and that the two men in the truck were not wearing seatbelts. Trader initiated a traffic stop.

{¶ 3} Trader approached the truck and asked the driver, later identified as Shawn Shoenberger, for the paperwork for the vehicle. Shoenberger did not have the paperwork for the vehicle nor any personal identification. Shoenberger told Trader the truck belonged to the passenger, Helton.

{¶ 4} Trader removed Shoenberger from the truck, conducted a consensual patdown search, and placed Shoenberger in the front seat of his patrol car. Shoenberger identified himself, and Trader called for backup from two nearby units. Trader did this because he had previously stopped a vehicle in that area and the driver, who resembled Shoenberger, had fled the scene.[1] Trooper Ron Bornino and Deputy William Niemi and Niemi's canine partner, Jago, responded to Trader's request for assistance. After Bornino arrived on scene, Helton was removed from the truck, frisked, handcuffed, and placed in Bornino's patrol car.

{¶ 5} Niemi then had Jago conduct a free-air sniff of the exterior of the truck. Jago alerted to the driver's side door of the vehicle. This door was ajar.

{¶ 6} Based on the dog's alert, Trader searched the interior of the truck. This search revealed a black container holding a scale. The scale had white residue on it. The search also revealed a homemade pipe. The pipe was made from a turn-signal bulb.

---

1. Evidence presented at the suppression hearing established that the previous stop involved Shoenberger's brother, Billy Joe Shoenberger. During that stop, Billy Joe Shoenberger had identified himself as Shawn Shoenberger. Trader testified that at the time of the stop in the instant case, he knew that Shawn Shoenberger was not the person involved in the prior stop.

{¶ 7} Both Helton and Shoenberger denied knowledge of these objects. Trader then advised both men that they were under arrest for possession of drug paraphernalia; however, Helton was never informed of his *Miranda* rights; Trader and Bornino testified that each believed that the other officer had Mirandized Helton.

{¶ 8} Following the arrests, Trader learned that both Shoenberger's and Helton's driver's licenses were suspended and the license plate on the truck was fictitious.

{¶ 9} Trader noticed that Helton appeared nervous. Knowing that suspects often conceal drugs in their underwear, Trader asked Helton if he had methamphetamine in his underwear. Helton said that he did but explained that the drugs belonged to Shoenberger.

{¶ 10} Helton was indicted on one count of possession of methamphetamine, R.C. 2925.11(A), (C)(1)(b), a third-degree felony, and one count of aggravated trafficking in drugs, R.C. 2925.03(A)(2), (C)(1)(c), a third-degree felony. Helton pleaded not guilty to the charges.

{¶ 11} On February 18, 2004, Helton filed a motion to suppress. Relevant to this appeal, Helton moved to suppress his statement relating to the methamphetamine in his underwear and the methamphetamine seized because of his statement. Helton argued that this evidence was improperly seized because of Trader's postarrest custodial interrogation and that this interrogation occurred prior to Helton's being informed of his *Miranda* rights. The trial court granted Helton's motion to suppress, finding that Helton had not been informed of his *Miranda* rights prior to Trader's questioning and that the methamphetamine was discovered as a result of Trader's questions. The trial court also found that the methamphetamine was not discovered from "leads making its discovery inevitable, nor from an alternate line of investigation that would have disclosed the methamphetamine, prior to the custodial interrogation." Based on these findings, the trial court concluded, "[T]he inevitable discovery exception would not apply to the seizure of the methamphetamine in this case."

{¶ 12} The state appeals from the trial court's judgment, raising one assignment of error: "The trial court committed reversible error when it granted defendant's motion to suppress."

{¶ 13} When considering an appeal of a ruling on a motion to suppress, we review the trial court's findings of fact only for clear error and give due weight to inferences the trial judge drew from the facts. We must accept the trial court's factual determinations when they are supported by competent and credible evidence. We determine only whether the findings of fact were against the manifest weight of the evidence. *State v. Bokesch,* 11th Dist. No. 2001–P–

0026, 2002-Ohio-2118, 2002 WL 818874, ¶ 12–13. We review the trial court's application of law to those facts de novo and independently determine whether the facts meet the appropriate legal standard. Id. Here, the state challenges the trial court's factual determination that the inevitable-discovery rule did not apply; thus we must accept the trial court's determination in this regard if it is supported by competent and credible evidence.

{¶ 14} The exclusionary rule operates to exclude evidence obtained by the government in violation of the United States Constitution. *State v. Harden* (May 26, 2000), 11th Dist. No. 98–L–234, 2000 WL 688727. The purpose of this rule is to deter police misconduct. Id. Of course, there are the competing concerns that the guilty are punished and the criminal-justice process is not subverted through the exclusion of trustworthy, relevant evidence. Id. at 11–12, 2000 WL 688727.

{¶ 15} The rule bars not only the admission of evidence obtained as a direct result of a constitutional violation, here, Helton's statement that he had methamphetamine in his underwear, but also evidence obtained as an indirect result of the constitutional violation, here, the methamphetamine. Id. at 12, 2000 WL 688727. The latter type of evidence is commonly referred to as the "fruit of the poisonous tree." Id.

{¶ 16} The United States Supreme Court has created three exceptions to the exclusionary rule for evidence obtained as an indirect result of a constitutional violation. Id. These are (1) the independent-source doctrine, (2) the inevitable-discovery doctrine, and (3) the attenuation doctrine. Id. In the instant case, the state argues that the inevitable-discovery doctrine applies and that the trial court should not have excluded the methamphetamine.[2]

{¶ 17} "The ultimate or inevitable discovery exception to the Exclusionary Rule is hereby adopted so that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763, at syllabus. This doctrine applies if the prosecution proves by a preponderance of the evidence that the police would have ultimately discovered the illegally obtained evidence apart from the unconstitutional conduct. *State v. Fernandez*, 11th Dist. No. 2001–L–162, 2002-Ohio-7140, 2002 WL 31862648, ¶ 34, citing *State v. Seals* (Dec. 30, 1999), 11th Dist. No. 98–L–206, 1999 WL 1314662.

---

**2.** The state does not contend that the trial court erred in suppressing the evidence obtained as a *direct* result of Trader's unconstitutional interrogation, i.e., Helton's statement that he had methamphetamine in his underwear.

██ {¶ 18} The state argues that police would have ultimately discovered the methamphetamine in Helton's underwear for three reasons: (1) it is reasonable for the police to search the personal effects of an arrestee as part of the booking procedure, *State v. Sincell* (Apr. 12, 2002), 2nd Dist. No. 19073, 2002 WL 538928; (2) police may conduct a full search of an arrestee's person incident to a lawful arrest, and such a search is not limited to the discovery of weapons, but may include evidence of a crime, *State v. Eckliffe*, 11th Dist. No. 2001–L–105, 2002-Ohio-7136, 2002 WL 31862652, ¶ 17; and (3) the evidence would have been admissible if it had been discovered during a routine inventory search, *Sincell.*[3]

{¶ 19} The state's contentions are all correct statements of the law; however, in the instant case, they do not support reversal of the trial court's decision. The difficulty for the state lies in its failure to present any evidence that Helton would have been subjected to a booking procedure, full search incident to a lawful arrest, or an inventory search. The record contains no evidence to establish what procedures or policies the police would have followed after Helton's arrest.

{¶ 20} The state failed to ask even one question of its witnesses that would arguably support application of the inevitable-discovery doctrine. For example, the state did not ask its witnesses whether Helton would have been transported to jail, or cited and released; the state did not ask if Helton would be subject to a strip search or be required to change into a jail uniform if transported to jail; the state did not ask if Helton's personal belongings would have been inventoried. In short, we cannot surmise that Helton would have been subjected to any policy or procedure that would have led to the discovery of the methamphetamine in his underwear. The state had the burden to present evidence leading to that conclusion, and it failed to do so.

{¶ 21} For the foregoing reasons, the state's sole assignment of error is without merit and the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Judgment affirmed.

DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.

---

3. Helton argues that the state waived the issue of inevitable discovery by failing to raise this issue before the trial court. The state's brief opposing Helton's motion to suppress did raise the issue of inevitable discovery, at least in passing; therefore, we address the merits of the state's appeal.